## In re TRACY et al., Water Commissioners.

## In re ERWIN.

(Supreme Court, General Term, Third Department. December 5, 1891.)

APPROPRIATION OF WATER-RIGHTS—ESTIMATING CAPACITY—TORRENTIAL STREAM.

In arriving at an estimate of the value of certain water-powers, of which the owner was deprived by reason of the appropriation of the stream as a supply for a neighboring town, the stream being torrential, the commissioners properly estimated its average capacity exclusive of seasons of flood and freshet.

Appeal from special term, Albany county.

Application by Edward Tracy and others, as water commissioners of the village of Lansingburgh, to acquire the right to appropriate a stream of water to the uses of the village. From an order confirming the report of commissioners appointed to estimate damages to proprietors, Warren Erwin, a proprietor, appeals. Affirmed.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

James R. Stevens, (C. F. Doyle, of counsel,) for appellant. Hyatt & Comstock, (A. C. Comstock, of counsel,) for respondents.

LANDON, J. For the purpose of providing the village of Lansingburgh with a proper supply of pure water, the water commissioners intercepted and appropriated the waters of Oil Mill creek above the appellant's premises, and thus totally deprived him of the use of the stream as a water power and privilege. The water commissioners instituted this proceeding under chapter 432, Laws 1883, to acquire the water-rights thus appropriated. The commissioners appointed by the court to appraise the just compensation to be made to the appellant awarded him $900.

No error of law is alleged. We should not find an error of fact in the amount of the award unless it appears to be more or less than the clear weight of the evidence requires. The appellant strenuously insists that it is much less. The stream had formerly been used as a water-power, but such use had been suspended for several years before the appropriation. The question was, what was it worth for the purposes of utilization? The nature of the ground would afford an ample head of water from a small storage dam; and hence, since the storage capacity was small, a material question was, what was the available and constant volume or capacity of the stream? The commissioners personally inspected the stream and locus in quo, and heard the testimony of the many witnesses. They evidently concluded that the stream was a torrential one, liable to be quickly and greatly swollen by heavy showers and rains and rapidly melting snows, and, these subsiding, to shrink to a comparatively small stream. They obviously concluded that without a large storage dam the surplus of water in seasons of high water would be wasted; and when the stream returned to its constant, normal flow, its supply of water was too inconsiderable to be of large value. The appellant undoubtedly pressed upon their attention, as he presses upon ours, what we may term the "fair average capacity" of the stream; that is to say, its average capacity exclusive of seasons of flood and freshet. It is obvious that this is not a true test; for the water that runs to waste for lack of a storage dam sufficient to hold it ought not to be reckoned; it cannot be applied to eke out the shortage of the dry season. Indeed, without a sufficient storage dam or reservoir, there can be no practical averaging of the volume of water. Each day must afford its own supply, and every day is a lost one in which the supply is too small. These were undoubtedly the views of the commissioners, and it must be conceded that they find support in the testimony, and seem to be sensible.

The appellant insists that the price or value of a horse-power of water at Cohoes is the proper measure of the value of a horse-power of water in this stream.   This difference is to be noted:   At Cohoes the water is delivered to the customer by the water-power company, free from any liability to the customer to maintain the dam which stores it; here the appellant would have to maintain his own dam.   This difference was undoubtedly considered by the commissioners, and affected the amount of the award, and properly so, we think.   Upon the whole case we must affirm the award and order.   Order affirmed, with $50 costs and disbursements.   All concur.